# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2017, 7:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin Rhymer,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 9, 2017<br><br>Court of Appeals Cause No.<br>09A04-1607-CR-1708<br><br>Appeal from the Cass Circuit Court<br><br>The Honorable Leo T. Burns, Judge<br><br>Trial Court Cause No. 09C01-1007-FB-3 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Justin Rhymer (Rhymer), appeals the trial court's denial of his motion for sentence modification.

[2] We affirm.

# ISSUE

[3] Rhymer presents one issue on appeal, which we restate as follows: Whether the trial court abused its discretion in denying Rhymer's motion for sentence modification.

# FACTS AND PROCEDURAL HISTORY

[4] On July 28, 2010, the State filed an Information, charging Rhymer with one Count of dealing in methamphetamine, a Class B felony. On January 9, 2014, Rhymer pleaded guilty to the dealing charge. Rhymer's plea agreement provided that the trial court would sentence Rhymer to ten years; with six years executed in Cass County Community Corrections, and four years suspended to probation. On February 6, 2014, the trial court held a joint plea and sentencing hearing. The trial court accepted Rhymer's guilty plea and subsequently sentenced Rhymer in accordance with the plea agreement. Shortly after Rhymer's sentencing, Cass County Community Corrections referred Rhymer to serve his sentence in White County Community Corrections. On February 12, 2014, White County Community Corrections accepted Rhymer into their program.

[5]     On February 3, 2015, Cass County Community Corrections requested a status report on Rhymer. White County Community Corrections responded by stating that after reviewing their records, it showed that Rhymer had never made contact or reported to serve his sentence. A warrant was issued and Rhymer was arrested. On April 7, 2015, based on Rhymer's failure to report to White County Community Corrections, the trial court issued a sentence modification order sentencing Rhymer to serve his ten-year sentence in the DOC, with four years suspended to probation. In the amended abstract of judgement for Rhymer's sentence modification dated April 22, 2015, the trial court noted that Rhymer was eligible for Purposeful Incarceration.[1]

[6]     On June 30, 2015, Rhymer wrote a letter to the trial court stating, in part,

> Upon my arrival in the DOC, I was informed by my case worker that I am in fact not considered Purposeful Incarcerated. My abstract of judgment is correct but my sentencing order does not state the information and wording that the DOC requires to consider an

_____

[1] According to the Indiana Department of Correction's website:

> In 2009 the Indiana Department of Correction (IDOC) began a cooperative project with Indiana Court Systems called Purposeful Incarceration (P.I.). The Department works in collaboration with Judges who can sentence chemically addicted offenders and document that they will "consider a sentence modification" should the offender successfully complete an IDOC Therapeutic community. This supports the Department [of] Correction and the Judiciary to get addicted offenders the treatment that they need and work collaboratively to support their successful re-entry into society.

Purposeful Incarceration, http://www.in.gov/idoc/2798.htm (last visited Feb. 22, 2017).

offender for Purposefully Incarcerated. Enclosed with this letter is a Verified Motion to Set an Order for Purposeful Incarceration.

(Appellant's App. Vol. II, p. 133). On August 7, 2015, the trial court issued an order stating, in part, that

> a. [Rhymer's] executed term of six (6) years is to be served with the Indiana Department of Correction[] as Purposeful Incarceration.

> b. That as a term of Purposeful Incarceration the Indiana Department of Correction[] is to enroll [Rhymer] in appropriate Therapeutic Community Program. That [Rhymer] is to abide by the terms and conditions of his assigned program. That once successfully completed, the Court will modify [Rhymer's] remaining executed term of sentence to the Community Transition Program and Community Corrections. If [Rhymer] fails to successfully complete his assigned program he will serve the entire executed term of sentence in the Indiana Department of Correction[].

> c. That upon completion of his assigned Therapeutic Community Program it is the responsibility of [Rhymer] and Council [sic] to notify the Court and schedule a hearing. At this point the Court will verify that [Rhymer] successfully completed the assigned program and generate an order modifying [Rhymer's] remaining term of incarcerated sentence to the Community Transition Program and Community Corrections.

(Appellant's App. Vol. II, pp. 134-35). On March 15, 2016, the DOC indicated that Rhymer had completed therapy at the Westville Therapeutic Community. Rhymer subsequently earned a time cut of 183 days. On March 24, 2016, Rhymer informed the trial court of his accomplishment and he requested modification of his sentence, *i.e.*, that he be allowed to serve the remainder of his sentence in community corrections.

[7]    Even though Rhymer had completed therapy, the DOC noted in its case notes that Rhymer had become uncooperative and was not adhering to the facility's rules. On March 29, 2016, Bradley Stigler (Stigler), a caseworker with Westville Correctional Facility, wrote to the trial court stating that immediately after Rhymer completed his therapy, he become uncooperative and was removed from the Therapeutic Community Facility. On April 20, 2016, without a hearing, the trial court denied Rhymer's request. On May 11, 2016, Rhymer filed a motion for a hearing. On July 14, 2016, the trial court held Rhymer's sentencing modification hearing and denied Rhymer's request based on the DOC's case notes and Stigler's letter dated March 29, 2016. Notwithstanding its denial of Rhymer's petition for modification of sentence, because Rhymer appeared *pro se*, the trial court scheduled another hearing for July 21, 2016, in order to afford Rhymer another opportunity to present his case yet again with the help of an appointed counsel. On July 21, 2016, at the start of the hearing, the trial court stated

> We were on the record last week and the Court made a record with respect to [] Rhymer's current situation. The Court made a reference to the plea agreement that was filed in this case and the fact that based on [] Rhymer's pleadings made a determination that he was entitled to appear and make a case for a modification of his sentence . . .all indications to the Court were that [] Rhymer has documentation from the Department of Corrections [sic] that he did, in fact, complete the therapeutic component, the court read into the record the statement by one of the officers or one of the therapist at the Department of Correction, and told you, Mr. Rhymer that I had denied your motion for modification based on that. You refiled and the court came to the same conclusion last week, but [] in order to make sure due process applies because we do have a written plea agreement in this case, I appointed counsel for you so that you could come back today to see if

there was anything that needs to be presented that was overlooked last time.

(Tr. pp. 26-27). At the hearing, Rhymer testified that

> I was in my room on the wing where [I] shouldn't have been filling out a request form to get some hygiene products from the DOC because they had lost all my property when I [] went to court in White County for custody over my daughter. After that, I had already filed, or asked to be moved [by] [] department of labor, [] and I was just waiting to be moved and I, I was removed after that with [] no warning basically, I was just removed.

(Tr. p. 29). The State's argument was that even though Rhymer had completed the therapeutic program at Westville Correctional Facility, Rhymer had failed to abide by the facility's rules. The State claimed that the trial court ultimately had the discretion to interpret the August 7th Order, *i.e.*, whether Rhymer had successfully completed his *assigned therapeutic program* before generating an order modifying Rhymer's sentence. At the close of the evidence, the trial court denied Rhymer's sentence modification request, and continued his placement in the DOC.

[8] Rhymer now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[9] Rhymer argues that the trial court abused its discretion by denying his petition to change his placement from the DOC to community corrections. We review a trial court's decision regarding modification of a sentence for an abuse of discretion. *Gardiner v. State*, 928 N.E.2d 194, 196 (Ind. 2010). An abuse of

discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the court misinterprets the law. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013).

[10] As noted, in 2010, Rhymer committed the offense of dealing in methamphetamine, a Class B felony, and in February 2014, he pled guilty to the offense. Following his guilty plea, the trial court sentenced him to ten years in the DOC, with four years suspended to probation. Rhymer's plea agreement stipulated that, if eligible, Rhymer could serve his executed six-year sentence in community corrections. On February 18, 2014, Cass County Community Corrections approved Rhymer for admittance into the White County Community Corrections. It is undisputed that Rhymer failed to report to White County Community Corrections to serve his sentence in 2014. On February 13, 2015, the State informed the trial court of Rhymer's sentence violation. Rhymer was arrested, and in April 2015, Rhymer's sentence was modified. Specifically, instead of serving his six-year executed sentence in community corrections, the trial court ordered Rhymer to serve his sentence in the DOC. The record shows that when Rhymer reported to the DOC to serve his sentence, he was informed that he was eligible for Purposeful Incarceration; however, because his sentencing order had not indicated that he was eligible for Purposeful Incarceration, he filed a motion with the trial court to have an order issued. On August 7, 2015, the trial court issued an order clarifying that

Rhymer's executed six-year sentence was to be served in the Purposeful Incarceration program.[2]

[11] Turning to Rhymer's main argument—that the trial court abused its discretion in denying his request to serve the remainder of his sentence in community corrections—as noted, we review a trial court's decision pertaining to sentencing modification for abuse of discretion, and an abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *See Heaton*, 984 N.E.2d at 616. Rhymer's core argument is placed on the fact that the August 7th Order specified that upon completion of the "Therapeutic Community Program," the trial court would modify his sentence and direct that his remaining term of six-years be served in community corrections. (Appellant's App. Vol. II, p. 134).

[12] Its undisputed that Rhymer completed the therapeutic program in March 2016, and as obligated by the August 7th Order, he notified the trial court of his accomplishment. The State argues that even though Rhymer completed the

---

[2] In his appellate brief, Rhymer states that "[f]ollowing [his] violation of Community Corrections in February 2014, [him], [his] Attorney, the State of Indiana, and Cass [] Community Corrections reached an agreement on a modified sentence." (Appellant's Br. p. 11). Accordingly, Rhymer states that the August 7th Order "is essentially a written plea agreement." (Appellant's Br. p. 13). Rhymer's argument that the August 7th Order is more or less a plea agreement, is inaccurate and unsound. The record shows that Rhymer desired an order from the trial court so as to enable the DOC to transfer him to the Purposeful Incarceration program, and the August 7th Order did exactly that.

program, Rhymer was entitled to a sentence modification only after the trial court had verified Rhymer's completion of the program to the satisfaction of the DOC. In support of its argument, the State directs us to paragraph (c) of the August 7th Order, stating

> That upon completion of his assigned Therapeutic Community Program it is the responsibility of [Rhymer] and Council [sic] to notify the Court and schedule a hearing. At this point the Court will verify that [Rhymer] *successfully completed his assigned program and generate an order modifying* [Rhymer's] remaining term of incarcerated sentence to the Community Transition Program and Community Corrections.

(Appellant's App. Vol. II, 135). (emphasis added). The State claims "[b]y the time the trial court could verify Rhymer's completion of therapy, Rhymer had breached the terms and conditions of his "assigned program" and had been removed from the Westville Therapeutic Community. (State's Br. p. 13). In support of its claim, the State directs us to the DOC's case notes dated March 23, 2016, stating that

> Rhymer is being discharged for non-compliance with the program expectations for participation and conduct after refusing to get out of bed and participate in programming. The misconduct was documented as follows;
>
> . . .Counselor did a walk through on the dorm to check for room compliance and to make sure the wing was clear as there was programming going on. . . . Rhymer was found to be in his room sitting on his bunk. Counselor asked [Rhymer] why he was back in his room and he said he was just relaxing. This isn't the first time he has been found on the wing and he was asked if he wanted to continue to be in the program last week. [Rhymer] stated that he wanted to stay and that he agreed to the program.

> . . . [Rhymer] continues [] to be non-compliant and there have been several complaints from other peers on the dorm that he is not programming. [Rhymer] is a green dot and appears to have the attitude that he doesn't have to do anything anymore (note: Green dot means he has completed all the program requirements to be eligible for the time cut."

(Appellant's App. Vol. II, p. 141). Following Rhymer's cited violations of the Westville Therapeutic Community rules, on March 29, 2016, Stigler, a caseworker with the facility, wrote to the trial court stating

> immediately upon application of his time cut. . . . Rhymer became uncooperative with the program and refused to participate in any further activities related to this program. He was removed from the program on 3/23/2016 due to his refusal to continue to follow Therapeutic Community rules. His refusal reveals a lack of application of Program lessons and related cognitive improvements that indicate he is merely time cut motivated.

(Appellant's App. Vol. II, p. 149). Rhymer argues that the alleged acts of misconduct transpired after he had completed his therapeutic program. Rhymer states in his appellate brief, the "State will argue that [he] refused to continue participating in further programing [sic] after filing his request for a transfer, but there was absolutely no requirement that" he had to "continue to participate in programming [sic] after successfully completing" the therapeutic program. (Appellant's Br. p. 14). We disagree.

[13] Turning to the record, we note that the August 7th Order, incorporated a requirement that Rhymer was to "abide by the terms and conditions of his assigned program." (Appellant's App. Vol. II, p. 135). Two days after Rhymer

completed the therapy program, Westville Therapeutic Community generated a report stating that Rhymer "continues to be assigned to this program as mentor." (Appellant's App. p. 146). Here, we find that even though Rhymer had made great strides in completing his therapy program, he "remained assigned" to the Westville Therapeutic Community and he had to abide by the rules. (Appellant's App. Vol. II, p. 135). As evidenced by the August 7th Order, the trial court had the discretion to determine what would count as a successful completion. When the trial court had the chance to verify Rhymer's completion of his assigned therapeutic program, it was faced with the dichotomy reports of Rhymer's completed therapy and Rhymer's negative behavior in the facility. Rhymer's bad behavior was referenced in the DOC's case notes and Stigler's letter to the court. Based on the above, we find that the trial court's decision to deny Rhymer's placement from the DOC to community correction was within its discretion and does not contravene the logic and facts before the court. Accordingly, we find no abuse of discretion, and we refuse to disturb Rhymer's current placement in the DOC.

# CONCLUSION

[14] Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Rhymer's motion for sentence modification.

[15] Affirmed.

[16] Crone, J. and Altice, J. concur